UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TIFFANY SCOTT                                         CIVIL ACTION

VERSUS                                                NO. 13-91-BAJ-RLB

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION

# NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on August 18, 2014.

_____
RICHARD L. BOURGEOIS, JR.
UNITED STATES MAGISTRATE JUDGE

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

TIFFANY SCOTT            CIVIL ACTION

VERSUS            NO. 13-91-BAJ-RLB

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF THE
SOCIAL SECURITY
ADMINISTRATION

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Tiffany Scott ("Plaintiff"), seeks judicial review of final decisions of the Commissioner of the Social Security Administration (the "Commissioner") pursuant to 42 U.S.C. § 405(g) concluding that, based on a redetermination of Plaintiff's case, she is no longer entitled to Supplemental Security Income (SSI) under Title XVI of the Social Security Act. (R. Doc. 14).[1] For the reasons assigned below, the Court recommends the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

## I. PROCEDURAL HISTORY

On April 8, 2008 Plaintiff filed an application for SSI, alleging disability due to left knee dislocation with residual limitations. (Tr. 134-36). The agency found Plaintiff disabled as of April 1, 2008. (Tr. 53, 165). Plaintiff turned 18 on April 24, 2008. (Tr. 13). On April 15, 2010, the agency conducted a redetermination of Plaintiff's case, and found that Plaintiff's disability ceased on April 1, 2010. (Tr. 51, 53-56). After Plaintiff requested reconsideration of the redetermination, a disability officer conducted a disability hearing and, on December 22, 2010, issued a decision concluding that Plaintiff was not disabled. (Tr. 57, 77-84). Plaintiff then filed

---

[1] References to documents filed in this case are designated by "(R. Doc. [docket entry number(s)] at [page number(s)])". Reference to the record of administrative proceedings filed in this case is designated by "(Tr. [page number(s)])".

1

a timely request for a hearing before an Administrative Law Judge ("ALJ") on March 21, 2011. (Tr. 89-92).

On October 26, 2011, the ALJ held a hearing in which Plaintiff, represented by counsel, appeared and testified. (Tr. 25-50). A vocational expert (VE), Todd S. Capielano, also testified at the hearing. (Tr. 11, 41-47). Through the ALJ, the Commissioner rendered an unfavorable decision regarding Plaintiff's claims SSI on November 18, 2011 (Tr. 8-24). The ALJ found that Plaintiff's disability ended on April 1, 2010, and she has not become disabled against since that date. (Tr. 19). Plaintiff's request for review was denied by the Appeals Council on December 19, 2012. (Tr. 1-6). The ALJ's decision rested as the final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you . . . file an action in Federal district court . . . ."). The ALJ's final decision is now ripe for review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)). The Fifth Circuit has further held that substantial evidence

"must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted). Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not reweigh the evidence, try the case de novo, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.*, *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's"); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden

shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities . . . ." 20 C.F.R. § 404.1520(c). At step three the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of sequential process); 20 C.F.R. pt. 404, subpt. P, app. 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

In her decision, the ALJ first found that Plaintiff was eligible for SSI benefits as a child for the month preceding the month in which she attained age 18, and that based on a redetermination of disability under the rules for adults who file new applications, the Plaintiff was notified she was no longer disabled as of April 1, 2010. (Tr. 13). At step two, the ALJ determined that since April 1, 2010, Plaintiff has had the following severe impairments: "morbid obesity and degenerative arthritis of the knee." (Tr. 13). At step three, the ALJ concluded Plaintiff did not meet any of the "listed impairments" contained in the Regulations. (Tr. 13-15).

4

In particular, the ALJ addressed Plaintiff's allegation that she has met the requirements for Listing 1.02, *Major dysfunction of a joint(s)*, and concluded that the Plaintiff did not meet the listing requirements. The ALJ then found that since April 1, 2010, the Plaintiff has had the RFC "to perform light work as defined in 20 CFR 416.967(b) except she can never climb ladders, ropes, or scaffolds; occasionally crouch, crawl, kneel, and climb ramps and stairs; frequently balance and stoop; and needs to avoid all exposure to hazards, such as machinery and heights." (Tr. 15). At step four, the ALJ concluded that Plaintiff has no past relevant work, and that the transferability of job skills is not an issue. (Tr. 18). At step five, the ALJ found that, after considering Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 18). Ultimately, the ALJ determined that Plaintiff's disability ended on April 1, 2010, and she has not become disabled against since that date. (Tr. 19).

## IV. PLAINTIFF'S ALLEGATIONS OF ERROR AND THE COMMISSIONER'S RESPONSES

Plaintiff alleges that the ALJ committed reversible errors in her Step 3 analysis. (R. Doc. 14). Plaintiff claims that the "ALJ improperly rejected the opinion of Plaintiff's treating orthopedist [Dr. Jack Loupe] which found her impairment met § 1.02(A) of the Listing of Impairments." (R. Doc. 14-1 at 6). Plaintiff also claims that the "ALJ's rationale at Step 3 is contradicted by substantial evidence and the ALJ arbitrarily rejected plaintiff's reasonable requests for an orthopedic CE and/or orthopedic expert testimony." (*Id.*).

In response, the Commissioner argues that there is substantial evidence to support the ALJ's step three finding and that he did not commit any reversible error. (R. Doc. 16). The Commissioner argues that Dr. Loupe should not be considered a treating physician and, therefore, no special weight should be given to Dr. Loupe's opinions. (*Id.* at 7-9). The

5

Commissioner further argues that even if Dr. Loupe had been Plaintiff's treating physician, the ALJ did not commit legal error by refusing to adopt his opinion that the Plaintiff's impairments met the requirements for Listing 1.02(A). (R. Doc. 16 at 9). The Commissioner also argues that it was not legal error for the ALJ to reject Plaintiff's requests for an orthopedic CE and/or orthopedic expert testimony. (*Id.* at 10-11).

## V. DISCUSSION

### A. The ALJ Did Not Commit Reversible Error by Not Granting Plaintiff's Request for an Orthopedic Consultative Examination and/or Orthopedic Expert Testimony

Plaintiff claims that the ALJ committed reversible error by not granting her request for an orthopedic consultative examination and a supplemental hearing to take medical expert testimony. (R. Doc. 14 at 11) (Tr. 48-49, 209, 234-35). An ALJ has a duty to develop the facts relative to a claim for benefits. *Kane v. Heckler*, 731 F.2d 1216, 1219-20 (5th Cir. 1984). In furtherance of this duty, the ALJ may request a consultative physical or mental examination or test where the medical sources cannot or will not give sufficient medical evidence about the claimant's impairment for the ALJ to determine whether the claimant is disabled. 20 C.F.R. § 416.917. A consultative examination is only required, however, where the objective medical evidence in the record is insufficient to make a proper determination of disability. *See Kane*, 731 F.2d at 1219-20; *see also Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977) ("[T]o be clear, 'full inquiry' does not require a consultative examination at the government expense unless the record establishes that such an examination is *necessary* to enable the [ALJ] to make the disability decision."). Similarly, an ALJ may ask for medical expert's testimony regarding whether an individual's impairment meets or medically equals a listing, but such testimony is not required where the medical record is sufficiently developed. *See* 20 C.F.R. § 416.927(e)(2); *see*

6

*also Dominguez v. Astrue*, 286 F. App'x 182, 186 (5th Cir. 2008) ("[T]he use and consideration of medical expert testimony is solely within the discretion of the ALJ."); *White v. Soc. Sec. Admin.*, 129 F. App'x 905, 906 (5th Cir. 2005) ("[T]he record was sufficiently developed and, therefore, the ALJ was not required to obtain additional medical expert testimony.").

Here, the ALJ did not commit reversible error by refusing to order an orthopedic consultative examination at the expense of the government and refusing to conduct a supplemental hearing to take medical expert testimony. The record contained objective medical evidence sufficient for the ALJ to make a proper determination of whether the Plaintiff was disabled, including a determination of whether Plaintiff's impairment satisfied a listing. The record contained examination notes and opinions of four medical doctors (Jack F. Loupe, M.D., Anthony Haase, M.D., Jimmie Varnado, M.D., Maria Pons, M.D.) relevant to a determination of whether the Plaintiff was disabled as a result of her severe impairments. (Tr. 162-63, 210-12, 247-53, 257-65, and 307-11).

Accordingly, the ALJ was not required to order a consultative examination at the government's expense or to have a supplemental hearing to take additional medical expert testimony.

### B. The ALJ Did Not Commit Reversible Error by Refusing to Adopt Dr. Loupe's Opinion that Plaintiff's Impairments Satisfied the Requirements of Listing 1.02(A)

After the ALJ's hearing, Plaintiff's representative filed a supplemental brief contending that Listing 1.02(A) was met based on answers to interrogatories completed by Dr. Jack Loupe on November 2, 2011. (Tr. 14, 208-12). Plaintiff's representative provided Dr. Loupe with the relevant regulations to assist him in answering these interrogatories. (Tr. 210).

Plaintiff claims that the ALJ should have accepted and adopted Dr. Loupe's opinion that Plaintiff's impairments meet or medically equal Listing 1.02(A). (R. Doc. 14-1 at 6). The determination of whether Plaintiff's impairments met or medically equaled a listing, however, is an issue reserved to the Commissioner. 20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ did not commit reversible error by not adopting as her own the opinion submitted by Dr. Loupe that Plaintiff has met the requirements for Listing 1.02(A).[2]

### C. The ALJ Did Not Commit Reversible Error by Refusing to Give Heightened Weight to Dr. Loupe's Opinions

Plaintiff claims that Dr. Loupe is her treating physician and, therefore, Dr. Loupe's post-hearing opinion that Plaintiff's impairments meet or medically equal the requirements of Listing 1.02(A) is entitled to controlling weight. (R. Doc. 14 at 10-11).

To be classified as a treating physician, a physician must have "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. An ongoing treatment relationship is established "if the claimant sees the physician 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition(s).'" *Huet v. Astrue*, 375 Fed. App'x. 373, 376 (5th Cir. 2010) (quoting 20 C.F.R. § 404.1502) (alteration in original).

Arguably, Dr. Loupe is not Plaintiff's treating physician because the record shows that he only treated Plaintiff twice, once on April 20, 2008, and then again on June 24, 2010, after the Plaintiff was redetermined to be not disabled. (Tr. 245-46, 248-49). Considering Plaintiff's impairments, two visits over the course of over two years apart does not appear to satisfy the requirement of an ongoing treatment relationship considering Plaintiff's impairments. *Compare*

---

[2] The sections below address the weight, if any, that the ALJ should have afforded to the opinions of Dr. Loupe as to the nature and extent of Plaintiff's impairments, as well as the ALJ's determination that Plaintiff did not satisfy the requirements of Listing 1.02(A).

*Hernandez v. Astrue*, 278 F. App'x 333, 338 n.4 (5th Cir. 2008) (examinations by doctor "only two times during the insured period (and only one time thereafter)" of plaintiff with severe impairments of degenerative disc disease, chronic pain syndrome, and failed back syndrome did not reflect an ongoing treatment relationship) *with Lambert v. Astrue*, No. 09-792, 2012 WL 2254313, at *6 (W.D. La. June 14, 2012) (doctor who performed two psychological evaluations in 5 years was plaintiff's treating physician considering that "frequency of this type of psychological evaluation is not atypical").

The Court need not decide whether Dr. Loupe was Plaintiff's treating physician, however, because even if he was the ALJ would not have committed reversible error by failing to give Dr. Loupe's opinion greater weight than the other medical evidence. Generally, the "opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000); *see also* 20 C.F.R. § 404.1527(c)(1) (examining physician opinion given more weight than non-examining physician). "Absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in" the Regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2) (current version at 20 C.F.R. § 404.1527(c)(2)-(6) (2012))).[3] However, the ALJ is not required to consider each of the six *Newton* factors when "there is competing first-hand medical evidence . . . ." *Walker v. Barnhart*, 158 F. App'x. 534, 535 (5th Cir. 2005) (quoting *Newton*, 209 F.3d at 458).

---

[3] Those criteria provide that the ALJ consider: (1) the length of the treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the relevant evidence supporting the opinion; (4) consistency of the treating physician's opinion with the record as a whole; (5) whether the opinion is that of a specialist; and (6) other factors which tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

When the record contains medical evidence from multiple first-hand sources, the ALJ is "not required to go through all six steps in *Newton*" because "the ALJ is responsible for resolving conflicts in the evidence, and we will not substitute our judgment for his." *Cain v. Barnhart*, 193 F. App'x. 357, 360 (5th Cir. 2006) (citing *Newton*, 209 F.3d at 452, 458; *Walker*, 158 F. App'x at 534); *see also King v. Comm'r of Soc. Sec. Admin.*, No. 12-752, 2014 WL 905207, at *4 (M.D. La. March 7, 2014) (*Newton* not applicable when ALJ is presented with competing first-hand medical evidence); *Powers v. Comm'r of Soc. Sec. Admin*, No. 12-448, 2014 WL 791867, at *7 (M.D. La. Feb. 25, 2014) (same).

Here, even if Dr. Loupe was Plaintiff's treating physician, the record contains first-hand medical evidence from other examining and treating sources, such as Dr. Anthony Haase, M.D. and Dr. Jimmie Varnado, M.D. Accordingly, the ALJ did not commit reversible error in not providing Dr. Loupe's opinion heightened weight for the purpose of the ALJ's step three analysis.[4]

### D. Substantial Evidence Supports the ALJ's Conclusion that Plaintiff's Impairments Do Not Meet or Medically Equal Listing 1.02(A)[5]

At step three, the ALJ considers the severity of the claimant's impairments without regard to vocational factors. The ALJ applies the Social Security Administration's Listing of Impairments, which "describes for each of the major body systems impairments that [the SSA]

---

[4] The Plaintiff also argues that the ALJ erred by giving Dr. Loupe's opinion "little weight" and Dr. Haase's opinion "significant weight" in the context of the ALJ's RFC determination. (R. Doc. 14-1 at 5 (citing Tr. 15-16)). The Plaintiff has not, however, challenged the ALJ's RFC determination on appeal. Furthermore, for the same reasons discussed above, the ALJ is not bound to provide Dr. Loupe's opinion heighted weight (even if he is a treating physician) because there is other competing first hand medical evidence in the record, including Dr. Haase's opinions. The ALJ may properly rely on the opinion of an examining physician over the opinion of another examining or treating physician. *See Bradley v. Bower*, 809 F.2d 1054, 1057 (5th Cir. 1987).

[5] The ALJ also references Listing 1.04 (disorders of the spine) in her decision, but that appears to be a typographical error. (Tr. 14). Plaintiff does not argue that the requirements for Listing 1.04 have been satisfied and the record cited by the ALJ contains Dr. Loupe's opinions regarding Listing 1.02, not 1.04.

consider[s] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 404.1525(a). A claimant whose impairment (or combination of impairments) meets or equals the criteria of a Listing is disabled and entitled to benefits. For that reason, the criteria in the Listings are "demanding and stringent." *Falco*, 27 F.3d at 162. "For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). An impairment that exhibits only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 529-32.

The ALJ should identify the listed impairment for which the claimant's symptoms fail to qualify and provide an explanation as to how he or she determined that the symptoms are insufficiently severe to meet any listed impairment. A bare and summary conclusion that a plaintiff does not meet the criteria of any Listing is beyond meaningful judicial review. *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Even if a court determines that the ALJ failed to state the reasoning for an adverse determination at step three, a reviewing court must still evaluate whether the error was harmless. *Audler*, 501 F.3d at 448; *see also Mays v. Bowen,* 837 F.2d 1362, 1364 (5th Cir. 1988) ("Procedural perfection in administrative proceedings is not required" as long as "the substantial rights of a party have not been affected." ).

Listing 1.02 (major dysfunction of a joint) is "characterized by gross anatomical deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." *See* 20 C.F.R. Pt. 404, Subpt. P, app'x 1, § 1.02. Listing 1.02(A) also requires "involvement of one major peripheral, weight bearing joint

(*i.e.*, hip, knee, or ankle) resulting in an inability to ambulate effectively, as defined in 1.00B2b." *Id.* § 1.02(A).

Plaintiff claims that the ALJ finding that since April 1, 2010, she did not meet or medically equal Listing 1.02(A) constituted reversible error because the decision is contrary to the substantial evidence. (R. Doc. 14-1 at 7-12) (Tr. 13-15). Plaintiff argues that she has met the requirements for Listing 1.02(A). The Court disagrees. The ALJ began her step 3 analysis by explaining that she considered whether Plaintiff's impairments "singularly or in combination meet or medically equal the required criteria for" Listing 1.02(A). (Tr. 13). The ALJ concluded, after consideration of the medical evidence, that "the signs, symptoms, and history of treatment presented" in the record "is inconsistent with any impairments of listing-level severity." (Tr. 14). In particular, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the requirements for Listing 1.02(A). (Tr. 13-15).

Plaintiff argues that "the ALJ's rationale [for step 3] is confusing as she fails to delineate which element(s) of the listing are not met . . . ." (R. Doc. 14-1 at 9). Although the ALJ did not expressly state which requirements of Listing 1.02(A) were not satisfied, the ALJ addressed Dr. Loupe's answers to Plaintiff's interrogatories, which discussed the elements of Listing 1.02A. The ALJ discussed contradictory evidence in the record regarding many of Dr. Loupe's assertions in support of Plaintiff's claim that her impairments met or medically equaled Listing 1.02(A). (Tr. 14-16).

Even if the ALJ erred by not providing sufficient support for her conclusion that Plaintiff's impairments did not meet or medically equal Listing 1.02(A), the error was harmless because substantial evidence supports the ALJ's ultimate conclusion. *Audler*, 501 F.3d at 448. In other words, contrary to Plaintiff's assertions, the record does not indicate that her

impairments meet or medically equal the criteria of Listing 1.02(A). *See Sullivan*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

The ALJ's overall discussion of the medical records in her step 3 analysis suggests that she found that the Plaintiff could "ambulate effectively" and, therefore, her impairments did not meet the requirements for Listing 1.02(A). (Tr. 14-15). The Regulations define ineffective ambulation and provides several examples of what constitutes ineffective ambulation. *See* 20 C.F.R. Pt. 404, Subpt. P, app'x 1, § 1.00(B)(2)(b)(1). "Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." *Id*. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation." *Id*. "To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living" and they "must have the ability to travel without companion assistance to and from a place of employment or school." *See* 20 C.F.R. Pt. 404, Subpt. P, app'x 1, § 1.00(B)(2)(b)(2). Examples of ineffective ambulation include "the inability to walk without the use of a walker, two crutches or two cane," and "the inability to carry out routine ambulatory activities, such as shopping and banking." *Id*.

The Court finds that there is substantial evidence to support a finding that Plaintiff is able to ambulate effectively, as defined by the Regulations.[6] The ALJ acknowledged that Dr. Loupe

---

[6] The ALJ's opinion and the briefing submitted by the parties discuss other elements of Listing 1.02(A), namely (1)"gross anatomically deformity (*e.g.*, subluxation, contracture, bony or fibrous ankylosis, instability)"; (2) "chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s); (3) "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected join(s); and (4) "involvement of one major peripheral, weight bearing joint (*i.e.*, hip, knee or ankle)." *See* 20 C.F.R. Pt. 404, Subpt. P, app'x 1, §

13

opined that the Plaintiff had "marked" gait abnormalities, objective findings supported the Plaintiff's allegation of chronic and severe pain, and the Plaintiff needed to prop up her left leg for up to three to four hours a day. (Tr. 14, 211-12). The ALJ rejected these opinions, and instead relied on contrary substantial evidence in the record that support the conclusion that Plaintiff was able to ambulate ineffectively. (Tr. 14-15).

The March 27, 2010, physical consultative examination by Dr. Haase provides substantial evidence in support of the ALJ's determination that Plaintiff's impairments did not meet or medically equal Listing 1.02(A) because the Plaintiff was able to effectively ambulate. (Tr. 13-15, 309-11). Dr. Haase noted in his exam that Plaintiff had a normal gait and did not use a brace to walk. (Tr. 14, 251, 309-11). Dr. Haase further stated that Plaintiff could rise from a sitting position without assistance, stand on her heels and toes, and tandem walk without difficulty. (Tr. 310). Dr. Haase described Plaintiff's knee "within normal limits" and observed Plaintiff had good motor tone, normal reflexes and muscle strength. (Tr. 310). Finally, Dr. Hasse opined that Plaintiff could stand and walk for a full work day (Tr. 16, 310-11).

Additional medical evidence discussed by the ALJ in her RFC determination also support the ALJ's finding that the Plaintiff's impairments did not meet or medically equal Listing 1.02(A). The Plaintiff's physician, Dr. Varnado, opined that it is not medically necessary for Plaintiff to use an assistive device for the purpose of standing or walking. (Tr. 162). Similarly, Dr. Pons, a state agency non-examining physician, opined after a review of Plaintiff's medical records that Plaintiff's impairments did not meet or medically equal a listed impairment and that she could stand and walk for 6 hours in an 8 hour work day without a hand-held assistive device. (Tr. 258).

---

1.02. Because the Plaintiff has the burden of establishing that all of the elements of Listing 1.02(A) are satisfied, if any element of the listing is not satisfied (namely the inability to ambulate effectively), then the Court need not address whether the preceding elements of the listing are satisfied.

Moreover, the Plaintiff's own admissions provided substantial evidence that the Plaintiff could ambulate effectively. Plaintiff stated in her Function Report dated March 7, 2010, that she could drive, attend church, go out alone, take care of personal care, and shop for food and other essentials once a week for one or two hours. (Tr. 174, 176-77).

Finally, as noted by the ALJ, even Dr. Loupe opined that Plaintiff could walk without the use of a knee brace. (Tr. 14, 249, 251) ("She is able to ambulate with and without her brace.").

Because the ALJ's conclusion that the Plaintiff's impairments did not meet or medical equal Listing 1.02(A) is supported by substantial evidence that Plaintiff is able to ambulate effectively, the Court finds no reversible error in the ALJ's step 3 determination that Plaintiff's impairments did not meet or medically equal Listing 1.02(A).

## VI. RECOMMENDATION

For the reasons assigned above, the Court **RECOMMENDS** the Commissioner's decision be **AFFIRMED** and Plaintiff's appeal **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 18, 2014.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**